

Simeon T. Flanagan, New York City, of the Bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, for appellants. Reynaldo Gubbins, pro se, was on the brief for appellants.

Joseph F. Goetten, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty., and Ross O'Donoghue and Joseph M. Howard, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Richard M. Roberts, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before STEPHENS, Chief Judge, and PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

On July 17, 1941, the President by proclamation[1] authorized the preparation and filing of a list to be known as "The Proclaimed List of Certain Blocked Nationals". The proclamation provided that any person

## GUBBINS et al. v. UNITED STATES.

## GUBBINS v. UNITED STATES.

### Nos. 10637, 10638.

United States Court of Appeals District of Columbia Circuit.

Argued June 26, 1951.

Decided July 19, 1951.

---

1. 6 Fed.Reg. 3555.

on the list should, for the purpose of Section 5(b) of an Act of October 6, 1917, be deemed to be a national of a foreign country and be treated for all purposes under Executive Order No. 8389[2] as though he were a national of Germany or Italy. It further provided that the exportation from the United States, to or for the account of any person on the list, of any article or material the exportation of which was prohibited by authority of Section 6 of an Act of July 2, 1940, was prohibited, except when authorized by license. On the same day a "Proclaimed List of Certain Blocked Nationals" was promulgated. The name of "Gubbins & Co., Ayacucho 341, Lima" appeared on that list.[3] On March 30, 1942, a supplemental list was promulgated which included the name of Reynaldo Gubbins.[4]

Reynaldo Gubbins and Guillermo Gubbins, partners in the firm of Gubbins & Co., filed in the United States District Court for the District of Columbia in January, 1950, a civil action against the United States of America, alleging that "the defendant" illegally and without justification placed the firm name on the proclaimed list and that as a result the business of the firm "was paralyzed and their good name ruined and besmirched in trading circles throughout the world.". The damage claimed was $5,000,-000. A similar suit was filed by Reynaldo Gubbins, claiming damages in the amount of $1,000,000. The District Court dismissed the actions on the grounds that the court was without jurisdiction and that the complaints failed to state a cause of action upon which relief might be granted.

Since these actions are brought against the United States as such, they will not lie unless the United States has consented to be sued. Appellants say that such consent will be found in the Federal Tort Claims Act, but that Act contains a provision that "The provisions of this title shall not apply to—

\* \* \* \* \* \*

"(e) Any claim arising out of an act or omission of any employee of the Government in administering the provisions of the Trading with the Enemy Act, as amended." [5] This exception effectively nullifies any consent, which might otherwise be found in the statute, by the United States to be sued in the pending actions.

References to several statutory enactments are necessary in order to trace with technical precision the course which leads to the foregoing conclusion. The Federal Tort Claims Act was Title IV of the Legislative Reorganization Act of 1946, enacted August 2, 1946.[6] As thus enacted, the pertinent exception provision read as above quoted. The sections of that statute were reenacted as sections of Title 28 of the United States Code, as enacted by Congress on June 25, 1948. Section 1346(b) of Title 28 now confers upon the District Courts jurisdiction of civil actions against the United States in tort, and Section 2680(e) of Title 28 contains the pertinent exception. It reads: "The provisions of this chapter and section 1346(b) of this title shall not apply to—

\* \* \* \* \* \*

"(e) Any claim arising out of an act or omission of any employee of the Government in administering the provisions of sections 1–31 of Title 50, Appendix." Sections 1–31 of Title 50, Appendix, of the United States Code are sections of the "Trading with the Enemy Act", which was originally enacted on October 6, 1917.[7] Section 5 of Title 50, Appendix, as it appears in the Code, is Section 5 of the Act of October 6, 1917, as amended. The authority under which the President asserted his power to issue the proclamation was, as stated by him, "the authority vested in me by Section 5(b) of the Act of October 6, 1917 (40 Stat. 415) as amended and Section 6 of the Act of July 2, 1940 (54 Stat. 714) as amended". The term "employee of the Government", as it appears in the Federal

---

2. 5 Fed.Reg. 1400 (1940), as amended, 12 U.S.C.A. § 95a note.

3. 6 Fed.Reg. 3571.

4. 7 Fed.Reg. 2443.

5. 60 Stat. 845 (1946).

6. 60 Stat. 812 et seq.

7. 40 Stat. 411 et seq.

Tort Claims Act, is defined by that Act to include officers in the executive departments. The proclaimed list was prepared and promulgated by the Acting Secretary of State, the Secretary of the Treasury, the Acting Attorney General, the Secretary of Commerce, the Administrator of Export Control, and the Coordinator of Commercial and Cultural Relations between the American Republics, acting jointly. Thus the list was an act of employees of the Government in administering the provisions of the Trading with the Enemy Act, and claims arising out of that Act are thus within the exception to the consent to be sued given by the Federal Tort Claims Act.

It should be added as pertinent that the Tort Claims Act also excepts actions founded in libel[8] and also limits damages for which action will lie to those "accruing" on and after January 1, 1945.[9]

The judgments of the District Court are Affirmed.

8. 28 U.S.C. § 2680(h).

9. 28 U.S.C. § 1346(b).